JOHN SHEEHAN, Respondent, *v.* HANNAH B. STACKHOUSE
ET AL., Appellants.

### June 14, 1881.

1. The statutory provision, that the sheriff shall divide real estate offered for sale under execution, is merely directory.

2. Where the sheriff is not requested to offer the land in parcels, and the evidence is contradictory as to whether the property would have sold for more if divided, the refusal of the trial court to set aside the sale because the land was not divided is not ground for a reversal.

3. A fairly conducted sale under execution will not be set aside merely because the price was inadequate.

4. That some incompetent testimony is admitted on a trial before the court, is not sufficient ground for reversing the judgment, in the absence of anything to show that the court proceeded upon an erroneous view of the law.

APPEAL from the St. Louis Circuit Court, LINDLEY, J.
*Affirmed.*

M. L. GRAY and J. M. HOLMES, for the appellants : The motion to set aside the sale is, in a restricted sense, addressed to the discretion of the trial court, but that discretion is reviewable by an appellate court. — *Parker* v. *Railroad Co.*, 44 Mo. 415 ; *The State ex rel.* v. *Taney*, 61 Mo. 397 ; *Kelly* v. *Hunt*, 61 Mo. 463.

GARLAND POLLARD, for the respondent: The finding of the trial judge stands as the verdict of a jury, and cannot be reviewed on appeal. — *Beck* v. *Pollard*, 55 Mo. 26. The statute providing that the sheriff shall divide the property is merely directory. — *Rector* v. *Hart*, 8 Mo. 448.

BAKEWELL, J., delivered the opinion of the court.

This was a motion to set aside a sale of real estate made by the sheriff of the county of St. Louis by virtue of an execution issued on a judgment in favor of plaintiff upon a special tax-bill. The land was sold under two executions, one in favor of Sheehan, and the other in favor of Corneli, and against the same defendants. In each case the motion

to set aside the execution was, on hearing, overruled. They were argued and submitted together in this court.

The land in controversy originally belonged to William Stackhouse, who owned a strip several hundred feet in length from east to west, and one hundred and ninety feet in width from north to south, in which strip was included the land in controversy. On the death of William Stackhouse, his widow, Hannah B. Stackhouse, and his five children joined in a conveyance to Henry J. Stoul, of Philadelphia, of this with other property. This conveyance was in trust, and the deed provided that, after the payment of taxes, said trustee should pay to the widow $800 of the rents, to the five children the next $1,500, and the surplus over $2,300 to the widow and children equally; the property to be conveyed to the five children on the death of the widow. This deed was duly recorded. The widow and children are all non-residents. An ordinance of the city was passed to open Twenty-seventh and Twenty-eighth Streets through this strip of land. The condemnation proceedings were commenced against "Hannah B. Stackhouse's trustee," who was not named, nor was he, or any of the children of William Stackhouse, made a party to these proceedings. The writ was returned "not found," and publication was made against "Hannah B. Stackhouse's trustee." In these proceedings (of which appellants never heard for some years after they were consummated), benefits were assessed in excess of damages; and the land commissioner gave judgment for the surplus. Under this judgment, the entire Stackhouse tract was sold, and bid in by the city. The two streets were graded and paved through the property, cutting off a narrow strip east of Twenty-seventh Street, and another west of Twenty-eighth Street. Special tax-bills were delivered to the plaintiffs in these two actions, who were contractors for the work. On these bills suits were begun against four-fifths of the Stackhouse heirs, by attachment and publication. Corneli sued

before a justice; Sheehan sued in the Circuit Court. Corneli got judgment by default. One of the Stackhouse heirs, hearing of the proceeding in the Sheehan case, caused an answer to be filed; but, for some unexplained reason, the case was not further defended, and judgment was rendered therein in favor of plaintiff. A transcript of the Corneli judgment was filed in the Circuit Court. Executions returnable to the April term, 1876, were issued in these two cases. The aggregate amount, with costs, was $957. Under these executions the property in dispute fronting one hundred and ninety feet on Twenty-seventh Street, and having a like front on Twenty-eighth Street, and running two hundred and seventy feet from street to street, was sold in a lump, to F. G. Flanagan, for $975, on March 4, 1876. No one representing the Stackhouses was present at the sale. Real estate experts, examined as to the value of the property, estimated it at prices ranging from $8 a foot for each front, which would be $3,040 for the whole tract, to $25 a foot, which would be $9,500 for the whole tract. Mr. Flanagan, who was connected with a firm engaged in examining titles to real estate, borrowed from one Leonora Benecke $5,000 upon a portion of the property; the certificate of title being furnished at the time of the loan by the real estate examining firm with which Mr. Flanagan was connected. The loan was made upon one-half of the premises in dispute, together with the strip east of Twenty-seventh Street, which Mr. Flanagan had also purchased. This deed of trust was unpaid at the time of the hearing of the motions. The deed of trust was executed on April 13, 1876. On May 24, 1876, and during the return term of the executions, appellants filed these motions to set aside the sale. Appellants also commenced ejectment against the city for the ground taken for Twenty-seventh and Twenty-eighth Streets, and recovered judgment.

On the hearing of the motions, respondents introduced, against the exceptions of appellants, the marshal's deed

to the city of St. Louis; the special tax-bills under the condemnation proceedings; the deed of trust to Leonora Benecke. Appellants offered the records in their two ejectment suits against the city, which were excluded. The real estate experts disagreed in their testimony as to the manner in which the property might have been most advantageously sold under the circumstances. Some of them testified that the property being an undivided interest and subject to liens, would probably bring more if sold in the lump than if divided into two parcels; some said that it would have sold better if subdivided into lots; and some said that it would have probably brought a better price if divided into two or more portions.

The statement of counsel for appellants has been substantially adopted, with such variations as the oral testimony as to values seemed to require.

1. A sale of real estate under execution is not to be avoided merely because, the property being susceptible of subdivision, the sheriff did not subdivide it, and sell it in parcels until the whole was sold, or so much thereof as would satisfy the execution. The officer has a discretion which the courts may correct when it has been abused. To set aside such sales where the sheriff is shown not to have abused his discretion, would tend to the injury of the debtor class by depreciating the value of real estate offered for sale under execution. Especially would this be the case if the sale was set aside where the defendants in execution had notice of the sale, made no request upon the sheriff to offer the property in parcels, and made no motion to set aside the sale until the return term of the writ was drawing to a close. *Rector v. Hart*, 8 Mo. 448. The court will interfere where there has been a violation of duty on the part of the sheriff, and the property has been needlessly sacrificed by a failure to divide. It is by no means clear from the evidence in this case that the land would have brought a better price if sold in parcels; still less that any portion of it would have re-

mained to the judgment debtor. The price was clearly inadequate; but that will generally be the case where an undivided interest in unimproved real estate in the outskirts of a large city is offered at sheriff's sale. If such sales were to be set aside for mere inadequacy of price, the class of bidders at such sales would be very much reduced. The title in this case was clouded by a special tax-bill for $344, which, though perhaps not valid, was at least apparently a lien. Under these circumstances, we cannot say that the learned judge of the Circuit Court erred in refusing to set aside the sale.

The provision of law (Rev. Stats., sect. 2368) that, where an execution is levied upon real estate, the sheriff shall divide the same, if susceptible of division, and sell so much thereof as will .be sufficient to satisfy the execution, is directory merely; and where he who seeks to sustain the method · of sale pursued by the officer, shows its justice and expediency, the sale will not be disturbed on the ground that there was no subdivision.

2. It is contended that the deed of trust to Leonora Benecke's trustee was improperly admitted in evidence. It must necessarily happen, even with the most careful and most learned judge, that evidence will sometimes be admitted which, whilst he regards it as competent when offered, turns out to be illegal. But, in civil cases, the mere admission of illegal evidence, even before a jury, is not always ground for reversal. The admission of this deed, · even if competent for no purpose, can furnish no ground in the present case for reversing the judgment. It is not to be supposed that the fact that Mrs. Benecke had lent money on this property before the expiration of the term of the Circuit Court during which a motion to set aside the sale might have been made, affected the decision of the motion. We are not to presume that it did so. If the appellants believed it possible that they could be prejudiced by the fact becoming known to the court, sitting as a jury,

that Flanagan had effected a loan upon the strength of his title to this land, they might have asked a declaration of law from the court as to the effect of this evidence.

The case seems to be one of hardship.  But, after all, appellants seem to have had notice of these proceedings in time to assert their rights, and to have neglected to do so. There was no diligence in making these motions ; and there seems to have been an extraordinary delay in prosecuting them.  Nevertheless, the case is one in which we would gladly interfere to set aside the sale, could it be done on legal principles.  The question whether the Circuit Court erred in refusing to sustain the motion on the evidence before it, must be answered in the negative.  Nor do we see that any error to the prejudice of appellants was committed in the admission or exclusion of testimony.

The judgment is affirmed.  All the judges concur.