BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1911.

---

## ELLEN HATCH, Appellant, v. C. W. BAYLESS, Respondent.

**Springfield Court of Appeals, March 4, 1912. Motion for Rehearing Overruled, May 6, 1912.**

1. **WITNESSES: Reputation of Party: Evidence: Appeal and Error.** In an action on contracts the defense was that the contracts had been altered or mutilated by plaintiff after delivery. The only evidence on this issue was that of plaintiff and defendant. The trial court permitted the introduction of the testimony of one of defendant's witnesses in the form of a deposition to the effect that defendant's reputation was good. *Held*, that the error was material and justified reversing the judgment. GRAY, J., dissents and *holds* that the error was not one justifying the reversal of the judgment, especially in view of the provisions of section 2082, Revised Statutes 1909.

2. ——: ——: ——: **Relevancy of Party's Character.** In civil cases the character of neither party, until assailed, can be inquired into, unless it is put in issue in that class of cases such as libel, slander and malicious prosecution, when its value may be considered in assessing the amount of damages.

3. **APPEAL AND ERROR: Action at Law: Equity.** In an action at law the appellate court is not authorized to try the case *de novo* and reject the incompetent evidence, as it might do in a suit in equity.

4. **CONTRACTS: Alteration: Burden of Proof.** In an action on a contract where the defendant pleads an alteration, the burden is upon the defendant to show such alteration.

Hatch v. Bayless.

5. **APPEAL AND ERROR: Error of Trial Court: Presumptions: Prejudicial Error.** Errors of a trial court are presumptively prejudicial and it devolves upon the party asserting their harmlessness to show such fact affirmatively or the presumption will prevail.

6. **EVIDENCE: Admitting Incompetent Evidence: Presumptions.** Where a trial judge sitting without a jury permits incompetent evidence to be given it is fair to assume that he gave weight to such evidence in the formation of his judgment.

7. **APPEAL AND ERROR: Objections to Testimony: Depositions.** The objections of appellant to the question and answer of a witness offered in the form of a deposition and covering the general reputation of both parties to the action is *held* to be sufficiently specific and to be in fact two objections, one striking at the testimony covering defendant's reputation and the other as to the reputation of the plaintiff.

8. ————: ————: ————: **Bill of Exceptions: Immaterial Error.** Where appellant has made two objections to the admission of the question and statement of a witness in a deposition and after the objections the bill of exceptions contained the statement, "which objection was overruled by the court," the fact that the letter "s" was omitted from the word "objection" is wholly immaterial.

9. ————: ————: ————: **Exceptions.** Where two objections are made to the question and answer of a witness in a deposition and the court by one ruling overrules the objections one exception to such ruling is sufficient under the provisions of sections 2028 and 2029, Revised Statutes 1909.

10. ————: ————: ————. A party will not be permitted to speculate on his chances and wait until the witness has answered the question before making his objection, but this rule cannot be applied with the same effect where the evidence is given in the form of a deposition.

11. ————: **Trial Without Jury: Error in Admitting Evidence.** While appellate courts do not try a law case *de novo*, yet when the case was tried before the court without a jury, they do not attach the same importance to error in the admission of testimony that they do where the trial was by a jury. GRAY, J., in dissenting opinion.

Appeal from Wright Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED.

*F. M. Mansfield, W. J. Boyd* and *Rechow & Pufahl* for appellant.

(1) Although there are alterations apparent on the face of the instrument, yet unless there is something suspicious about them, it will be presumed that they were made contemporaneously with the execution of the instrument. Paul v. Leeper, 98 Mo. App. 515; Bailey v. Bank, 99 Mo. App. 571; Cox v. Mignery & Co., 126 Mo. App. 682; Stillwell v. Patton, 108 Mo. 352; Kirkpatrick v. Wiley, 197 Mo. 163. (2) The presumption that an alteration of a written document was made prior to, or at least contemporaneous with its execution is not overcome as a matter of law by suspicious circumstances apparent upon the face of the document. Grimes v. Whitesides, 65 Mo. App. 1. (3) In civil action the character of neither party, until assailed, can be inquired into, unless it is put in issue by the proceeding itself. No attack had been made on the reputation of the defendant for honesty, truthfulness or uprightness and it was error to permit witness, Fenner, to testify to the same. Gutzwiller v. Lackman, 23 Mo. 172; Rogers and Gillis v. Troost's Admr., 51 Mo. 476; Dudley v. McCluer, 65 Mo. 241; Vawter v. Hultz, 112 Mo. 639; Black v. Epstein, 221 Mo. 304; Lbr. Co. v. Hartman, 45 Mo. App. 647; Grocer v. Targart, 78 Mo. App. 166; Gordon v. Miller, 111 Mo. App. 350; Stewart v. Watson, 133 Mo. App. 47.

*E. H. Farnsworth* and *Lamar, Lamar & Lamar* for respondent.

(1) Where a jury is waived and the case tried by the court, the finding by the court stands on the same footing as the verdict of a jury. Taylor v. Cayce, 97 Mo. 242; Bond & Stock Co. v. Houck, 213 Mo. 416; Irwin v. Woodmen, 104 Mo. 403; Vincent v. Means, 207 Mo. 709; Slade v. Foard, 131 Mo. App. 164; Rice v. Wade, 131 Mo. App. 334; Goodman v. Simmons, 113

Mo. 123; Tipton v. Christopher, 135 Mo. App. 619; Furniture Co. v. Toll, 133 Mo. App. 404. (2) *Non est factum* or payment and discharge, or release may be joined in the same answer. Nelson v. Brodhack, 44 Mo. 576; Garr, Scott & Co. v. Black, 120 Mo. App. 181; Bank v. Stewart, 136 Mo. App. 34; Ruff v. Miltner, 92 Mo. App. 620. The rule in this state is that defenses are not inconsistent unless the proof of one disproves the other. (3) The fifth, sixth, seventh and eighth points in appellant's brief are directed to the action of the court below in permitting portions of the deposition of one witness Fenner, referring to the said letters written to defendant by plaintiff to be read, and in refusing to exclude the statement of Fenner as to the good reputation of the defendant. This testimony was by deposition, the trial before the court and Fenner is the only witness who referred to the reputation of defendant, and although technically, this evidence may not have been admissible, plaintiff was not injured thereby and the error was harmless, especially when the trial was before the court. Sperry v. Cool, 207 Mo. 698; Gibbs v. Haughowout, 207 Mo. 384; Scharer & Martin v. Hill, 125 Mo. App. 382; Taylor v. Cayce, 97 Mo. 251; Easton v. Cranmer, 102 N. W. 944; Morris v. Moon, 120 S. W. 1065. (4) It is submitted on the whole that the finding and the judgment is for the right party and will not be reversed by this court for error not materially affecting the merits. R. S. 1909, sec. 2082; Finkelnburg's Appellate Practice, p. 110; Cross v. Gould, 131 Mo. App. 585; Vandiver v. Robison & Son, 125 Mo. App. 314; Steele v. Darner, 124 Mo. App. 338; Broderick v. Andrews, 135 Mo. App. 63; Burch v. Brandecker, 123 Mo. App. 470; Reynolds v. Reynolds, 136 S. W. 414.

F. M. McDAVID, Special Judge.—In March, 1902, the plaintiff and defendant entered into two separate contracts whereby the defendant promised and agreed

to pay the plaintiff the sum of five hundred dollars, upon conditions and terms in such contracts specified, each contract calling for the payment of two hundred and fifty dollars, in fruit trees, said sum of five hundred dollars being in payment for certain personal property sold by the plaintiff to the defendant at the time.

The suit was brought in the circuit court of Wright county, and was returnable to the September term, 1908. The petition is in two counts in the usual form, pleading the execution of the contracts, amounts due thereon, the conditions of same, a failure of the defendant to comply with their terms, and a prayer for judgment. The defendant in due course filed an amended answer duly verified, admitting that on the day alleged he executed two contracts, but averring that said contracts, after the execution and delivery thereof, had been changed, and, with a fraudulent purpose, mutilated, and that by reason thereof, the defendant was no longer liable thereon. The answer further alleged that the change and mutilation complained of is that the original contracts, as executed, had written thereon the time when the said apple trees were to be delivered, to-wit: Under the first contract (Exhibit ''A''), they were to be delivered in the spring of 1903, and in the second contract (Exhibit ''B''), they were to be delivered in the spring of 1904, and the defendant alleged that the parts of the contracts whereon was written the time specified for the delivery of these trees had been torn off, thereby rendering the contracts void. Further answering, the defendant alleged that he at various times, prior to the spring of 1903, wrote to the plaintiff, at the address left by her with him for that purpose, asking for shipping directions, and that she made no reply thereto; and that in the spring of 1903, he prepared, packed and boxed in good condition, ready for shipment, two hundred and fifty dollars worth of apple trees and delivered same at

the depot in West Plains, Missouri, ready for shipment. Failing to receive any shipping directions and failing to find any at West Plains, the defendant alleged that he took the trees back home and that he healed them in the garden, and that "healing," they died. As to the second contract, the answer does not aver any delivery of the trees, therein called for, at West Plains, but alleges that he reserved two hundred and fifty dollars worth of trees ready for delivery, as provided for in said contract, at any time during the spring of 1904, awaiting shipping directions from plaintiff, and that defendant requested from plaintiff such shipping directions and that plaintiff failed and refused to answer any of his communications; that by reason of such delay and failure of plaintiff, though the defendant carefully cared for said trees and held them ready for delivery, they died during the summer and fall of 1904, all to the damage of the defendant in the sum of two hundred and fifty dollars, the amount called for in said contract marked Exhibit "B."

Plaintiff by reply denies any mutilation of the contracts; denies that she tore off or detached any part of said contracts; and denies that the defendant delivered any trees at West Plains, Missouri, as provided for in the contract; and then generally denies all new matter pleaded in defendant's answer.

The testimony of the plaintiff and defendant tends to support their respective theories of the case and the allegations of their respective pleadings. As to the integrity of the contracts sued on and whether or not there had been any change or mutilation thereof, there was no testimony save and except that given by the parties to the action. One witness, to-wit, L. M. Fenner, who was postmaster at that time at Buckhart, Missouri, gave testimony tending to corroborate the testimony of the defendant respecting the writing by him of letters to plaintiff requesting directions for shipment of trees, and likewise corroborating him in his

statement that in the spring of 1903 he had hauled apple trees, boxed and ready for shipment, to West plains, Missouri. Over the objections of the plaintiff, this witness, whose testimony was introduced in this case in the form of a deposition, was permitted to testify concerning the general reputation of both plaintiff and defendant for truthfulness, honesty and upright- ness, in the vicinity of Buckhart, where they resided, and was permitted by the court over such objections to state that the reputation of the defendant was good while that of plaintiff was bad.

The trial was to the court, a jury being waived, and judgment being rendered for the defendant, the plaintiff appealed. This is a sufficient statement of the facts.

Numerous errors alleged to have been committed by the trial court are presented to us for determination in the brief of counsel for appellant. We have considered all of the assignments of errors and have examined the authorities cited in support thereof, as well as the briefs—original, and supplemental—of counsel for respondent in reply thereto. However, in the view which we take of the case, and the conclusion we have reached, it will be necessary to discuss only one point, to-wit, the alleged error of the trial court in permitting evidence to be introduced as to the character of the plaintiff and of the defendant.

The authorities in this state on this subject are uniform and unambiguous. In civil cases, the character of neither party, until assailed, can be inquired into, unless it is put in issue in that class of cases such as libel, slander, and malicious prosecution, when its value is to be considered in assessing the amount of damages. [Vawter v. Hultz, 112 Mo. 633, 20 S. W. 689; Alkire Grocer Co. v. Tagart, 78 Mo. App. 166; Dudley v. McCluer, 65 Mo. 241.] So it unquestionably appears that in this case the trial court committed error in admitting evidence as to the defendant's gen-

eral reputation. But the respondent strenuously insists that this was not material error prejudicial to the rights of the appellant and that the judgment ought to be affirmed notwithstanding the error.

It is to be remembered that this was an action at law and not a suit in equity, and that the appellate court in such a case is not authorized to try the action *de novo* and in such trial reject incompetent evidence.

It is to be recalled in this case that the respondent alleged that the contracts sued on had been mutilated by plaintiff tearing from them, after they had been delivered, material stipulations as to the time of the delivery of the trees, with intent to cheat the respondent, which claim the plaintiff denied. There was no substantial evidence on this point save that of plaintiff and defendant. On the proof of such issue, the burden was upon the defendant, and hence his character and standing became a material factor in determining the value of his evidence.

It has been often declared by our Supreme Court —whose decisions are by constitutional mandate the law of this court—that errors of the trial court are presumptively prejudicial, and that it devolves upon the parties asserting their harmlessness to show such fact affirmatively or the presumption will prevail. [Barkley v. Cemetery Assn., 153 Mo. l. c. 317, 54 S. W. 482; Dayharsh v. Railroad Co., 103 Mo. 570, 15 S. W. 554; State v. Taylor, 118 Mo. l. c. 161, 24 S. W. 449; Bindbeutal v. Street Ry. Co., 43 Mo. App. 463; Morton v. Heidorn, 135 Mo. 608, 37 S. W. 504.] This principle was lucidly and logically stated in the Bindbeutal case, supra, by SMITH, P. J., as follows (l. c. 469): "Error and prejudice go hand in hand, until the latter, which is the creature of presumption, is met and neutralized by something in the record. It follows, therefore, that the interference of the appellate court with the judgment of the lower court can be successfully invoked by showing an error in the record; for when

error is shown the law supplies and attaches the consequence of prejudice.'' Also, by VALLIANT, J., in the case of Levels v. Railroad, 196 Mo. l. c. 617, 94 S. W. 275, as follows: ''But it not infrequently happens that the duty of examining the evidence when it is conflicting devolves on the appellate court for the purpose of deciding whether an error occurring in the trial was of a character sufficiently serious to require a reversal of the judgment. Section 865, Revised Statutes 1899, forbids an appellate court to reverse a judgment unless it believes that error was committed in the trial court against appellant 'and materially affecting the merits of the action.' Sometimes, therefore, a judgment is affirmed although illegal testimony has been received or other error committed, if, upon the whole record, it is absolutely clear that the judgment is for the right party and that the error could not have affected the result of the trial. But when the case turns on a question of fact and the evidence is so conflicting that a verdict for either side can be said to have substantial evidence to support it, then the introduction of illegal evidence is a matter of more consequence than it would be in a case where the evidence in support of the verdict was substantially all one way.''

The learned trial judge sitting without a jury permitted the incompetent evidence to be given over the objections of the plaintiff, and it is fair to assume that he gave weight to such evidence in the formation of his judgment. [Holmes v. Farris, 97 Mo. App. 305, 310, 71 S. W. 116; Kearney Bank v. Froman, 129 Mo. l. c. 430, 31 S. W. 769.] In the case of McDonald v. Matney, 82 Mo. 358, 366, the trial had been before the court sitting as a jury and the respondent made the contention in the Supreme Court that inasmuch as the cause was tried by the court without the intervention of a jury, the declarations of law were of no importance, except as indicating the theory on which the court proceeded, and that it was immaterial that im-

proper evidence was admitted if there was competent evidence to sustain the finding. The court said: "That is correct only where it is obvious that the incompetent evidence admitted did not induce the verdict, but how can we say that the court found its verdict on the other evidence, and that the record of the probate court, to no extent, influenced its finding? How do we know that if that incompetent evidence had been rejected, the verdict would have been for defendant? It is no answer to this, that the evidence would warrant a verdict for plaintiff, even if that read had been executed. This court is not to try the fact. That was the province of the court below, and it erred in admitting evidence without which it might have rendered a verdict for defendant, which this court could not have set aside as against the weight of evidence." In Walther v. Null, 233 Mo. l. c. 111, 134 S. W. 993, in equity case, LAMM, J., in discussing errors of the trial court in admitting incompetent testimony and the effect thereof, says: "But in a close case, or where a mass of irrelevant and prejudicial proof is allowed, we may never know what insidious effect the improper testimony had upon the mind of the trial chancellor. Such evidence tends to create an *atmosphere* about the case inimical to judicial and intellectual robustness and serenity of judgment. It puts the discriminating powers of the chancellor to a dangerous and unnatural test. It puts an enticing and alluring color in the case that tends to seduce the mind of the chancellor aside from the main traveled road to ultimate justice. It puts a mote in his mind's eye. It may put a question mark after his decree." These authorities make it reasonably clear that in so far as the admission of incompetent evidence is concerned, there is no distinction to be drawn in principle in legal actions tried by a jury or tried by the judge sitting as a jury. In either case, the error stands upon the same footing, and the same

rules are to be applied in determining whether the admission of the improper evidence constituted reversible error.

It is earnestly contended, however, by counsel for respondent, that even though this point raised by the appellant be well taken, yet that the objections and exceptions to this testimony are not sufficient to authorize the appellate court to find error in the ruling of the trial court.

The record shows that at the trial the defendant offered the deposition of L. M. Fenner who testified, in part, as follows:

"I know the general reputation of C. W. Bayless in and about Buckhart, Missouri, where he resided, for truthfulness and honesty and uprightness, and know that that reputation is good."

"I know also the general reputation of Mrs. Ellen Hatch in and about Buckhart, Missouri, for truthfulness, honesty and fair dealing, and I know her reputation is bad."

The record shows that the following objections were made: "The plaintiff objects to the question and statement in the deposition as to the general reputation of Bayless for truthfulness, honesty and uprightness, because no attack has been made on the reputation of defendant, and also objects to the testimony regarding plaintiff's general reputation for truthfulness in 1909 because that is not in issue, and asks that that part of the deposition be stricken out; which objection was overruled by the court, to which ruling the plaintiff then and there excepted."

It is apparent that the testimony as to the good character of the defendant Bayless was incompetent and that the testimony as to the bad character of the plaintiff Hatch was incompetent at the time it was offered. Now it is said that only one objection was made and that it was rightfully overruled because it was a general objection and part of the testimony was

clearly admissible. The record shows that the plaintiff (1) objected to the question and statement in the deposition as to the general reputation of C. W. Bayless, assigning a specific reason, namely, because no attack had been made on the reputation of the defendant; and also (2) objected to the testimony as to the plaintiff's general reputation for truthfulness, etc., in 1909, assigning a specific reason, namely, because it was not in issue. It will be seen from this record that there were two objections, the first levied specifically at the testimony as to the reputation of the defendant, and the second leveled specifically at the testimony as to the reputation of the plaintiff, and specific objections assigned. Neither one of the objections was general;. they were each specific; there is not merely one general objection; there are two objections, and each is specific—each directed at what the plaintiff supposed was improper testimony, and the testimony objected to is pointed out and each objection applied to the part complained of. It is true that after the objections, this language appears: ''Which *objection* was overruled by the court.'' However, the record on its very face shows that there were two objections and not one; and the fact that in making up the bill of exceptions the one doing so omitted the ''s'' on the word ''objection'' is wholly immaterial. The facts of this case, therefore, do not raise the same questions of law as were presented in Ray County Sav. Bank v. Hutton, 224 Mo. 1. c. 50, 123 S. W. 47, and other cases cited. In that case, an objection was made to the entire deposition, and the court says that if there was any proper testimony in the deposition, the general objection to the whole is bad. That certainly is not a case like the present. Here, there is no general objection, but there are two specific objections, and counsel in this case properly segregated the good parts from the bad parts and leveled their objections specifically at what they supposed was improper testimony and ear-.

marked it in a distinguishable way. In this they discharged their whole duty to the court.

It is further said that if we treat the objections as two separate objections, then but one exception was saved, and that is insufficient. Our statutes providing for exceptions (sections 2028 and 2029, Revised Statutes 1909) say that the exception must be made at the time the court makes the ruling and that there must be a separate exception to each ruling the court makes, but that these several exceptions may be embodied in one bill of exceptions. The common law practice is stated in Thompson on Trials, sec. 2806, to the effect that a single exception reserved to one or more rulings of the trial court in gross presents no question which can be considered on appeal. This rule would not seem to apply to the present case because there was one ruling only and consequently there could be but one exception. The court evidently considered that the testimony both as to the defendant's good reputation and as to the plaintiff's bad reputation was competent and by one ruling overruled the objections. So that this case does not present a condition in which there are two or more rulings of the trial court in gross and only one exception, but there is one ruling and one exception. It seems to me that the law was complied with.

In a supplemental brief the respondent makes the further point that the objection of plaintiff to this evidence which we are now considering was not made until after the testimony was in, and the question had been answered, and therefore came too late. The record in this respect is somewhat awkward in its form, and, as printed, tends in some degree to justify this contention. There can be no question but that under the decisions of the appellate courts of this state a party will not be permitted to speculate on his chances and wait until the witness has answered the question before making his objection; it then comes too late and should be overruled. [Stewart v. Watson, 133 Mo.

App. 44, 112 S. W. 762; Utz v. Insurance Co., 139 Mo. App. l. c. 556, 123 S. W. 538; Lutz v. Railway Co., 123 Mo. App. 499, 100 S. W. 46; Mann v. Balfour, 187 Mo. l. c. 304, 86 S. W. 103; State v. Pyles, 206 Mo. l. c. 632, 105 S. W. 613.]

It will be remembered, however, that in the case in hand, the evidence complained of was in the form of a deposition, and it is fair to assume that the objections thereto were made in the usual manner by noting same on the margin thereof. They are definite in form and point out the evidence complained of. In the above cases, the reason upon which the rule is based is that a party is not permitted to speculate on his chances or the result of an answer; but that reason fails and the rule cannot be applied with the same effect where both the questions and answers are patent to counsel and to the court, as in this case, where evidence is given in the form of a deposition. In such case, there can be no speculating by counsel on what the answer to a question may be, for the answer is before him. So we conclude that the rule invoked, and announced in the above cited cases, should not be applied here.

We hold, therefore, that the objection to this testimony was properly and timely made, and, being unable to declare as a matter of law that the error of the trial court did not materially affect the merits of the action, it follows that the judgment should be reversed and the cause remanded, and it is so ordered. *Nixon, P. J.,* concurs. *Cox, J.,* disqualified. *Gray, J.,* dissents and files separate opinion.

## DISSENTING OPINION.

GRAY, J.—I respectfully dissent from the majority opinion. The case was tried before the court without a jury, and the judgment is reversed and the cause remanded on the sole ground that the court permitted one witness to testify to the general reputation of the

defendant. I admit the evidence was not competent, but do not believe it in any wise effected the result. Since every witness is presumed to be truthful, testimony sustaining his character in that regard is only cumulative, and therefore, whether its admission was material error must be determined by all the circumstances of the case.

But one witness testified to the general reputation of the defendant. This witness did not appear in person, but his testimony was in a deposition, and in an answer to one question he said the general reputation of the defendant for truthfulness, honesty and uprightness was good. There was no other reference to the character of the defendant, and because the witness testified to something that the court would have presumed to be true without his testimony, this judgment is reversed and the cause remanded for another trial.

I fully believe the judgment would have been for the defendant had this testimony not been admitted. The evidence discloses that a Mr. Mills accompanied by a man who gave his name as Davis, visited the defendant and made a demand for the payment of the notes. Mills testified that the defendant admitted he had not paid the notes in money or apple trees, and made an excuse that he could not do so because he did not have the trees. The defendant denied this conversation, and this alleged Mr. Davis was not offered as a witness to corroborate Mills. The defendant testified, however, that this man's name was not Davis, but Hatch, and that he was the husband of the plaintiff. Subsequently a deposition was taken and the witness gave his name as Palmer, and a witness testified that he was acquainted with the plaintiff's husband and his handwriting, and that the signature of the witness, Palmer, to the deposition, was written by Hatch, the plaintiff's husband.

In addition to this testimony, another witness tes-
tified that he saw the man who visited the defendant
with Mills, and that his name was not Davis, but Hatch,
and that he was plaintiff's husband.

The deposition of the so-called Mr. Palmer was
not offered in evidence, and the only testimony to con-
tradict the three witnesses as to the identity of this
man was the testimony of the plaintiff herself, who
testified that her husband did not visit the defendant
with Mills, and that his deposition had not been taken.
She claimed that Davis and Palmer really existed,
and that she had sent Davis to see the defendant about
the payment of the notes, and at one time assigned
the notes to Palmer. It is only fair to say that the
preponderance of the evidence supported the defend-
ant's theory that Davis and Palmer were only names
assumed by plaintiff's husband, and that she must have
known that fact. In addition to being thus contra-
dicted by three witnesses, some testimony was admit-
ted tending to prove that the general reputation of
the plaintiff for truth and veracity was bad. With
the plaintiff thus contradicted by three witnesses and
her general reputation for truth assailed by one wit-
ness, it is perfectly apparent to me that the trial court
would have found the issues for the defendant, even
though the one witness had not testified that the de-
fendant's reputation was good.

While the appellate courts do not try a law case
*de novo,* yet when the case was tried before the court,
they do not attach the same importance to error in
the admission of testimony that they do where the trial
was by jury. [Sheehan v. Stackhouse, 10 Mo. App.
469; Moore v. Mountcastle, 72 Mo. 1. c. 607; Barnett
v. Pepper, 114 Mo. App. 1. c. 221, 89 S. W. 345; Lewis
v. Frankle, 138 S. W. 64.]

I have never examined a record since I have been
a member of this court that was absolutely free of
error, and if every case is too be reversed because

error is found in the record, none will be affirmed. It seems to me that it is unreasonable to say that the judgment in this case was given to the defendant because one witness in a single statement said the defendant's reputation was good, and I believe in reversing and remanding the judgment, we do not give proper consideration to section 2082 of the Revised Statutes of 1909, which reads: ''The Supreme Court, of Courts of Appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action.''